| | |
|---|---|
| ———————————————— )<br>MICHAEL B. JONES, )<br> )<br>Plaintiff, )<br>v. )<br> )<br> )<br>CITY PLAZA, LLC, T.E. JOHNSON & )<br>SONS, INC., and ONLINE INFORMATION )<br>SERVICES, INC. )<br> )<br>Defendants. )<br>———————————————— ) | 19-cv-924<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff MICHAEL B. JONES ("Mr. Jones"), complaining of Defendants

CITY PLAZA, LLC ("City Plaza"), T.E. JOHNSON & SONS, INC. ("TEJ") and

ONLINE INFORMATION SERVICES ("ONLINE"), shows the Court:

1. Mr. Jones brings this action for actual, statutory, and punitive

damages against Defendants for unlawfully retaining Mr. Jones's security deposit,

for attempting to collect a debt they were not legally entitled to collect, and for

reporting inaccurate and incomplete information to consumer reporting agencies, in

violation of state and federal law.

## II. Parties

2. Plaintiff Michael B. Jones is a natural person currently residing in

Atlanta, GA but who, at the time of the events described in this Complaint, resided

in Winston-Salem, NC.

3.     Mr. Jones is a "consumer" as that term is defined by 15 U.S.C.
§1692a(3), which is part of the Fair Debt Collection Practices Act ("FDCPA"). He is
also a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), which is part of
the Fair Credit Reporting Act ("FCRA"); a "consumer" as that term is defined by
N.C. Gen. Stat. § 75-50(1), which is part of the North Carolina Debt Collection
Practices Act ("NCDCPA"; and a "consumer" as that term is defined by N.C. Gen.
Stat. § 58-70-90(2), which is part of the North Carolina Collection Agency Act
("NCCAA").

4.     Defendant City Plaza, LLC ("City Plaza") is a limited liability company
organized and existing under the laws of the State of North Carolina. Its principal
place of business is located at 300 N. Greene Street, Ste. 1400, Greensboro, NC
27401.

5.     City Plaza is the owner of a building known as the Village Lofts,
located at 511 N. Cherry St. in downtown Winston-Salem, which it offers for lease
in the form of several residential dwelling units.

6.     To the extent that City Plaza engages, directly or indirectly, in
collection of obligations owed or alleged to be owed in connection with its lease of
residential dwelling units, it is a "debt collector" as that term is defined by N.C.
Gen. Stat. § 75-50(3).

7.     Defendant T.E. Johnson & Sons, Inc. ("TEJ") is a corporation organized
and existing under the laws of the State of North Carolina. Its principal place of
business is located at 920 W. Fifth St., Winston-Salem, NC 27101.

2

8. TEJ is a real estate management firm that City Plaza has retained to manage its Village Lofts residential dwelling units.

9. To the extent that TEJ engages, directly or indirectly, in collection of obligations owed or alleged to be owed in connection with the lease of residential dwelling units under its management, it is a "debt collector" as that term is defined by N.C. Gen. Stat. § 75-50(3).

10. Online Information Services, Inc. ("ONLINE") is a corporation organized and existing under the laws of the State of North Carolina. Its principal place of business is located at 685 W. Firetower Rd., Winterville, NC 28590.

11. According to ONLINE's Internet homepage, "ONLINE Information Services, Inc. is the nation's leading developer of credit risk assessment and debt recovery solutions. For over 40 years, our collection services and applicant screening tools have helped clients across the nation increase their profitability. ONLINE is committed to your success and focused on one simple goal: **to eliminate bad debt.**" (emphasis in original). A copy of ONLINE's homepage, accessed on March 15, 2019, is attached to this Complaint as **Exhibit A**.

12. The "Property Managers" page of ONLINE's website contains a subsection called "Collections," which states: "When all of your attempts to collect from tenants who have skipped out owing you money have failed, refer the account to ONLINE Collections. ONLINE Collections has been in the collection business for over 40 years. ONLINE has the technology and the professional staff to locate and collect from those who have skipped, owing you money." A copy of this page of

3

ONLINE's website, accessed on March 15, 2019, is attached to this Complaint as **Exhibit B**.

13.     ONLINE has applied for and been granted licenses to operate as a collection agency by the North Carolina Department of Insurance, and has been issued the permit numbers 888 and 4057.

14.     ONLINE uses instrumentalities of interstate commerce and/or the mails in the course of its business, the principal purpose of which is the collection of debts; moreover, ONLINE regularly collects and attempts to collect, directly and indirectly, debts owed or due or asserted to be owed or due another. ONLINE is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

15.     ONLINE is directly and indirectly engaged in soliciting, from more than one person, delinquent claims owed or due or asserted to be asserted to be owed or due the solicited person, and it is directly and indirectly engaged in the asserting, enforcing and prosecuting of those claims. ONLINE is therefore a "collection agency" as that term is defined by N.C. Gen. Stat. § 58-70-15(a).

16.     According to the "Property Managers" page of its website, ONLINE also maintains what it calls the "ONLINE Rental Exchange," which it touts as "the Total Solution to Screening New Tenants." The website goes on to state: "The ONLINE Rental Exchange is the next generation in **tenant screening, credit risk,** and **bad-debt management solutions** for the property management and rental industry. We provide you with identity verification, rental deposit decisions, and fully detailed credit files over the Internet or through your current property

4

management platform to assess the potential risk of your prospective tenants" (emphasis in original).

17.     The website goes on to state: "The ONLINE Rental Exchange allows you to report evictions, property damage, late payments, or monies owed to you by former tenants to all other Rental Exchange customers. In return you receive any negative information on your prospective tenants submitted by other Rental Exchange users. This allows you to protect your property from prospective tenants who have damaged property or skipped out on rent in the past."

18.     ONLINE regularly engages in the practice of assembling and evaluating consumer credit information and other information on consumers for the purpose of furnishing consumer reports to third parties, and it uses means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports. ONLINE is therefore a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). It is also a "nationwide specialty consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(x).

### III. Jurisdiction & Venue

19.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

20.     This Court has supplemental jurisdiction over Plaintiff's North Carolina state law claims under 28 U.S.C. § 1367, in that his state law claims are so related to his FDCPA and FCRA claims that they form part of the same case or controversy.

5

21.     Venue is proper in this district under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred within this district, specifically: Defendants unlawfully retained Plaintiff's security deposit in this district, and Defendants misrepresented to Plaintiff that he owed a debt while he resided in this district.

## IV. Factual Allegations

22.     In May 2017, Mr. Jones agreed to lease Apartment 306 at the Village Lofts, located at 511 N. Cherry Street in downtown Winston-Salem, which was owned by Defendant City Plaza and managed by Defendant TEJ.

23.     Mr. Jones's lease began on June 30, 2017 and was scheduled to end on May 31, 2018.

24.     Mr. Jones's agreed to pay $753 per month to live in Apartment 306. This was reflected in his lease as "Rent" of $880 per month, minus an $85 dollar "move in concession" and a $42 "parking concession" (¶ 28(c)).

25.     Mr. Jones also gave TEJ and City Plaza a security deposit of $200.

26.     Unfortunately, in late November 2017, Mr. Jones's mother unexpectedly passed away. It became necessary for Mr. Jones to terminate his lease at Village Lofts early to deal with the repercussions of her death.

27.     Mr. Jones gave TEJ notice of his intent to vacate Apartment 306 before the scheduled end of his lease on November 30, 2017.

28.     Mr. Jones paid his December 2017 rent in full.

29.     On December 19, 2017, Mr. Jones vacated Apartment 306.

30.     TEJ quickly found another tenant for Apartment 306; the new tenant's lease began on January 6, 2018.

31.     The new tenant agreed to pay $795 per month to lease Apartment 306.

32.     TEJ, acting on behalf of City Plaza, refused to return Mr. Jones's $200 security deposit, as required by N.C. Gen. Stat. § 42-52.

33.     On January 30, 2018, TEJ sent Mr. Jones a letter demanding payment of $454.60. The letter itemized that amount thusly:

| | | |
|---|---|---|
| **Credits** | | |
| Security Deposits | | $200.00 |
| | **Total Credits** | **$200.00** |
| | | |
| **Charges** | | |
| Early Term- paint, clean and make ready | | $504.00 |
| 6- days rent | | $150.60 |
| | **Total Charges** | **$654.60** |
| | **Amount Due** | **$454.60** |

(emphases in original). A copy of the letter TEJ sent to Mr. Jones is attached to this Complaint as **Exhibit C**.

34.     The use of residential security deposits in North Carolina is governed by the Tenant Security Deposit Act, N.C. Gen. Stat. § 42-50 *et seq.*

35.     A landlord is permitted to apply a security deposit obtained from a residential tenant only to a limited number of specific uses enumerated in § 42-51(a). Those enumerated uses include, among others, "[d]amage to the premises" (§ 42-51(a)(2)), "[d]amages as the result of the nonfulfillment of the rental period" (§ 42-51(a)(3)), and "[t]he costs of re-renting the premises after breach by the tenant,

7

including any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises" (§ 42-51(a)(6)).

36. N.C. Gen. Stat. § 42-52 provides in part:

> Upon termination of the tenancy, money held by the landlord as security may be applied as permitted in G.S. 42-51 or, if not so applied, shall be refunded to the tenant. In either case the landlord in writing shall itemize any damage and mail or deliver same to the tenant, together with the balance of the security deposit, no later than 30 days after the termination of the tenancy and delivery of possession of the premises to the landlord. . . . The landlord may not withhold as damages part of the security deposit for conditions that are due to normal wear and tear nor may the landlord retain an amount from the security deposit which exceeds his actual damages.

37. According to an itemized bill from a contractor hired by TEJ, the $504 listed in the collection letter as "Early Term- paint, clean and make ready" was used to repaint and clean Apartment 306 and to install new drip pans and a new air filter in Apartment 306's air-conditioning unit.

38. Repainting, cleaning, and replacing the drip pans and air filter in an air-conditioning unit are tasks that landlords routinely perform between tenants, and thus constitute "normal wear and tear" within the meaning of § 42-52.

39. Moreover, City Plaza did not actually lose any rental income as a result of the early termination of Mr. Jones's lease. In fact, the early termination of Mr. Jones's lease paved the way for a new tenant who agreed to pay $42 per month *more* than Mr. Jones had agreed to pay. In other words, if Mr. Jones had fulfilled the full term of his lease, City Plaza would have realized $3,765 of income from the

8

rental of Apartment 306 for the period from January through May 2017; instead, on information and belief, because Mr. Jones terminated his lease early, City Plaza realized about $3,847 of income from the rental of Apartment 306 for the period from January through May 2017.

40. Because City Plaza did not sustain any actual damages as a result of the nonfulfillment of Mr. Jones's lease, neither it nor TEJ was entitled to charge Mr. Jones $150.60 for "6- days rent."

41. When Mr. Jones never received his $200 security deposit back from City Plaza and TEJ, he attempted to resolve the dispute by directly communicating with. In response, on March 30, 2018, a TEJ employee named Cathy Robertson sent Mr. Jones an email which stated,

> I would advise you to consult with an attorney that specializes in real estate law in the state of North Carolina.
>
> Under North Carolina Law [sic], Normal [sic] wear and tear are not deductable [sic] when you complete your lease term. However, you breached your contract and terminated your lease early. Therefore, you do bear the actual cost associated with getting the property back ready to market.

A copy of the email sent by Ms. Robertson is attached to this Complaint as **<u>Exhibit D</u>**.

42. Ms. Robertson's email misrepresented N.C. Gen. Stat. § 42-52, which flatly prohibits the use of a security deposit for conditions due to normal wear and tear, without regard for whether or not a lease term is fulfilled.

9

43.     Mr. Jones also attempted to resolve the dispute through the Better Business Bureau ("BBB").

44.     TEJ's response to Mr. Jones's BBB complaint, which was signed by TEJ President Phillip W. Johnson, Jr., misrepresented North Carolina law on the permitted uses of a security deposit; it also misrepresented that City Plaza had suffered "lost rent" as a result of Mr. Jones's early termination. A copy of Mr. Johnson's response to the BBB complaint is attached to this Complaint as **Exhibit E**.

45.     Mr. Jones also attempted to resolve the dispute through the North Carolina Real Estate Commission's ("NCREC") complaint process.

46.     TEJ retained a law firm, Martin & Gifford, PLLC ("M&G") to prepare and file its response to Mr. Jones's NCREC complaint. A copy of M&G's response on behalf of TEJ, excluding exhibits, is attached to this Complaint as **Exhibit F**.

47.     The response to the NCREC complaint falsely stated that "[b]ecause the lease with the new tenant is for $85 per month less than Mr. Jones' lease, TEJ has actually undercharged Mr. Jones for the damages he owes to the landlord" (emphasis in original). The response also falsely stated that City Plaza suffered "lost rent . . . as a result of Mr. Jones' breach of contract.

48.     On information and belief, TEJ instructed M&G to make the false statements described in paragraph 47.

49.     Despite Mr. Jones's repeated efforts to resolve his dispute with TEJ and City Plaza, he has yet to receive a refund of his security deposit.

50.     Sometime in 2018, TEJ falsely reported that Mr. Jones owed a $454.60 debt to Defendant ONLINE – which, as explained in paragraphs 10 through 18, is both a debt collector and a consumer reporting agency.

51.     Sometime after TEJ sent the bogus debt to ONLINE, ONLINE in turn reported the debt to three consumer reporting agencies that compile and maintain files on consumers on a nationwide basis: TransUnion LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax, Inc. ("Equifax").

52.     On information and belief, ONLINE also maintains a "file" – as that term is defined by 15 U.S.C. § 1681a(g) – on Mr. Jones in its own Rental Exchange database.

53.     On information and belief, the Online Rental Exchange file on Mr. Jones contains false information concerning the bogus $454.60 debt to TEJ.

54.     Section 1681j(a)(1)(C) of the Fair Credit Reporting Act requires ONLINE, as a nationwide specialty consumer reporting agency, to "establish[] a streamlined process for consumers to request consumer reports" in accordance with Consumer Financial Protection Bureau ("CFPB") regulations, "which shall include, at a minimum, the establishment by each such agency of a toll-free telephone number for such requests."

55.     The CFPB regulations governing the "streamlined process" ONLINE is required to implement are found in Regulation V at 12 C.F.R. § 1022.137. Among other things, that regulation provides that the mandated toll-free telephone number must be "published, in conjunction with all other published numbers for the

nationwide specialty consumer reporting agency, in any telephone directory in which any telephone number for the nationwide specialty consumer reporting agency is published; and . . . [i]s clearly and prominently posted on any Website owned or maintained by the nationwide specialty consumer reporting agency that is related to consumer reporting, along with instructions for requesting disclosures by any additional available methods . . . ." 12 C.F.R. § 1022.137(a)(1)(ii)-(iii).

56.     As of the date of this Complaint, and at all times relevant to the events described in this Complaint, neither of ONLINE's websites (www.onlineis.com and www.onlinerentalexchange.com) have listed a toll-free telephone number specifically described as the number consumers may call to request a consumer report.

57.     In fact, the ONLINE website's "Consumer" page intentionally obscures the fact that ONLINE maintains files or prepares consumer reports subject to the Fair Credit Reporting Act's disclosure requirements. That webpage is organized into four frequently asked questions. The answers to the frequently asked questions are initially hidden; to reveal an answer, the visitor must click on a "more+" link that appears after each question. The "Consumer" page reads, in pertinent part:

> • **Adverse action was taken against me (i.e. you were charged more for services or your application was denied) based on information in my credit file. Who should I contact to receive a copy of my credit report/dispute an item, etc.?**
>
> The credit bureau used to generate your report should appear on the adverse action letter you received. Please contact them directly or visit their website – TransUnion, Experian, or Equifax. If ONLINE was listed in your

letter, please contact us at (800) 765-8268 or click here. . .
.

   **• I'm interested in purchasing a copy of my credit report. Does ONLINE sell credit reports directly to consumers?**

   At this time, ONLINE does not sell credit files directly to consumers. To purchase a copy of your report, please contact the three national credit bureaus – TransUnion, Experian, or Equifax.

A copy of the "Consumer" page as it initially appears – with the answers to the frequently asked questions hidden – is attached to this Complaint as **Exhibit G**. A copy of the "Consumer" page in which the answers to the two questions quoted above have been revealed – after clicking on the "more+" links following the associated questions – is attached to this Complaint as **Exhibit H**.

   58.   While there is a phone number listed on "Consumer" page, that page does not state that a consumer may call it to obtain a copy of a consumer report; to the contrary, the text of that page is calculated to give consumers the impression that consumers can *not* obtain copies of consumer reports maintained by ONLINE.

   59.   In any case, the phone number that appears on the "Consumer" page, which does not stand out in any way, and which is in fact *hidden* until a visitor to the website clicks on a link, is anything but "clear[] and prominent[]."

   60.   In November 2018, Mr. Jones called the phone number listed on the ONLINE website's "Consumer" page, (800) 765-8268.

   61.   During that phone call, Mr. Jones clearly and specifically asked an ONLINE employee for a copy of the ONLINE Rental Exchange file on him.

62.     During that phone call, the ONLINE employee did not agree to provide a copy of Mr. Jones's consumer report, as required by 15 U.S.C. § 1681j(a)(1)(A); to the contrary, she obscured the fact that ONLINE maintains files and prepares consumer reports subject to the Fair Credit Reporting Act's disclosure requirements by referring Mr. Jones to a website where he could obtain reports from TransUnion, Experian, and Equifax.

63.     ONLINE's concerted efforts to deprive Mr. Jones of viewing its file on him in its Rental Exchange – which consisted of failing to clearly and prominently display a dedicated toll-free phone number in a manner consistent with CFPB regulations on its website; refusing to agree to provide a copy of Mr. Jones's consumer report to him even after he directly and explicitly asked for it; making statements calculated to mislead Mr. Jones into believing that ONLINE does not maintain files or prepare consumer reports subject to disclosure under the Fair Credit Reporting Act both on its website and in a phone call with Mr. Jones; and attempting to misdirect Mr. Jones toward consumer reports prepared by TransUnion, Experian, and Equifax through statements on its website and in a phone call with Mr. Jones – subjected Mr. Jones to the risk of a harm that Congress enacted 15 U.S.C. § 1681j to prevent — specifically, the risk that a consumer reporting agency would maintain a file on him that included false derogatory information that would likely lead to future adverse action (e.g., being refused a residential lease or being required to pay a larger security deposit than he would

have otherwise been required to pay), without the opportunity to dispute and demand reinvestigation of the false derogatory information beforehand.

64. In or about February 2019, Mr. Jones contacted Experian to dispute the $454.60 debt, which had been reported by ONLINE.

65. After Mr. Jones sent his dispute to Experian, Experian, in turn, sent it to ONLINE.

66. Even after receiving a copy Mr. Jones's dispute from Experian, which put ONLINE on notice as to the precise nature of Mr. Jones's dispute, ONLINE continued to report the bogus $454.60 debt to TransUnion in March and April 2019.

67. Then, in late April 2019, Mr. Jones sent directly to ONLINE a letter laying out in detail why the $454.60 was bogus under North Carolina law.

68. Mr. Jones never received a response to his April 2019 dispute from ONLINE and, on information and belief, ONLINE never bothered to conduct the reasonable investigation required of credit reporting agencies by 15 U.S.C. § 1681i.

69. Nevertheless, ONLINE has continued to report the bogus debt to Experian and TransUnion. In fact, ONLINE is falsely reporting to Experian that it "resolved" Mr. Jones's dispute.

70. At the times that ONLINE reported the bogus debt in March through June 2019, ONLINE knew or should have known that, under North Carolina law, TEJ was not entitled to collect $454.60 from Mr. Jones. And ONLINE certainly knows that Mr. Jones's dispute has not been "resolved."

71. As a result of TEJ's decision to wrongfully withhold Mr. Jones's security deposit and its efforts to collect a bogus debt, and as a result of ONLINE's decision to report credit information it knows or should have known was incorrect and its refusal to allow Mr. Jones to see the file it maintains on him, Mr. Jones has experienced emotional distress in the form of anger, worry, and frustration at a time when he was already experiencing emotional distress due to the passing of his mother.

72. As a result of Defendants' acts, Mr. Jones has been refused credit, causing him to miss potentially profitable business opportunities.

## COUNT ONE
### North Carolina Tenant Security Deposit Act
### (N.C. Gen. Stat. § 42-50 *et seq.*)

73. Plaintiff incorporates by reference the allegations of paragraphs 1 through 72 as if fully repeated here.

74. As more fully explained above, City Plaza, through the actions of its agent TEJ, withheld Mr. Jones's $200 security deposit for purposes not authorized by N.C. Gen. Stat. §§ 42-51 and -52.

75. City Plaza and TEJ's act of wrongfully withholding Mr. Jones's security deposit was willful, in that Mr. Jones repeatedly explained to TEJ why it was not entitled to withhold the security deposit and repeatedly tried to resolve the dispute through means other than litigation, yet TEJ continued to withhold the deposit.

76. Under § 42-55, Mr. Jones is entitled to a refund of his $200 security deposit as well as an award of attorney fees to be taxed as part of the costs of court.

<u>**COUNT TWO**</u>
**North Carolina Debt Collection Practices Act**
**(N.C. Gen. Stat. § 75-50 *et seq.*)**

77. Plaintiff incorporates by references the allegations of paragraphs 1 through 76 as if fully repeated here.

78. As more fully explained above, TEJ – a debt collector for purposes of the North Carolina Debt Collection Practices Act – committed the following six discreet acts, each of which constituted a separate violation of that Act:

- Applying Mr. Jones's security deposit to a bogus debt that TEJ and City Plaza were not legally entitled to collect, which was an unconscionable practice prohibited by §§ 75-55 and -55(2) ("[c]ollecting . . . from the consumer all or any part of . . . any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge");

- Sending the collection letter dated January 30, 2018 (**<u>Exhibit C</u>**), which was a deceptive representation prohibited by §§ 75-54, -54(2) ("[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt"), and -54(4) ("falsely representing the creditor's rights") and an unconscionable practice prohibited by §§ 75-55 and -55(2) ("attempting to collect from the consumer all or any part of . . . any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge");

- Sending the email dated March 30, 2018 (**<u>Exhibit D</u>**), which was a deceptive representation prohibited by §§ 75-54, -54(2) ("[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt"), and -54(4) ("falsely representing the creditor's rights")

17

and an unconscionable practice prohibited by §§ 75-55 and -55(2) ("attempting to collect from the consumer all or any part of . . . any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge");

- Sending the response to Mr. Jones's BBB complaint (**Exhibit E**), which was a deceptive representation prohibited by §§ 75-54 and -54(4) ("falsely representing the creditor's rights");

- Instructing M&G to make false and misleading statements in response to Mr. Jones's NCREC complaint, which was a deceptive representation prohibited by §§ 75-54 and -54(4) ("[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . or falsely representing the creditor's rights"); and

- Sending the bogus $454.60 debt to ONLINE, knowing that ONLINE would both report it to other consumer reporting agencies and include the information in its own Rental Exchange, which was a deceptive representation prohibited by §§ 75-54 and -54(4) ("[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . or falsely representing the creditor's rights") and an unconscionable practice prohibited by §§ 75-55.

79. City Plaza is vicariously liable for the deceptive and unconscionable collection practices of its agent TEJ.

80. Defendants willfully engaged in the six acts described above, and there was an unwarranted refusal by Defendants to fully resolve the dispute with Mr. Jones.

81. Under § 75-56, Mr. Jones is entitled to actual damages; civil penalties in an amount the Court may allow, but not less than $500 nor greater than $4,000

18

for each of the six discreet acts listed above; and punitive damages. Under § 75-16.1, Mr. Jones is entitled to a reasonable attorney fee, to be taxed as a part of the court costs.

## COUNT THREE
### Violation of Fair Debt Collection Practices Act
### (15 U.S.C. § 1692 *et seq.*)

82.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 81 as if fully repeated here.

83.     As more fully explained above, ONLINE – a debt collector for purposes of the Fair Debt Collection Practices Act – communicated information about a debt which it knew or which it should have known to be bogus to TransUnion, Experian, and Equifax in March and April 2019, which violated 15 U.S.C. § 1692e(8).

84.     Under 15 U.S.C. § 1692k, Mr. Jones is entitled to actual damages; statutory damages of up to $1,000; the costs of the action; and a reasonable attorney fee.

## COUNT FOUR
### North Carolina Collection Agency Act
### (N.C. Gen. Stat. § 58-70-1 *et seq.*)

85.     Plaintiff incorporates by references the allegations of paragraphs 1 through 84 as if fully repeated here.

86.     As more fully explained above, ONLINE – a collection agency for purposes North Carolina Collection Agency Act – made false accusations to credit reporting agencies that Mr. Jones had not paid a just debt, in violation of N.C. Gen. Stat. § 58-70-95(3).

87.     Under § 58-70-130, Mr. Jones is entitled to actual damages; civil penalties in an amount the Court may allow, but not less than $500 nor greater than $4,000; and punitive damages. Under § 75-16.1, Mr. Jones is entitled to a reasonable attorney fee, to be taxed as a part of the court costs.

## COUNT FIVE
### Violations of Fair Credit Reporting Act
### (15 U.S.C. § 1681 *et seq.*)

88.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 87 as if fully repeated here.

89.     As more fully explained above, ONLINE – a nationwide specialty consumer reporting agency for purposes of the Fair Credit Reporting Act – committed several willful acts calculated to deprive Mr. Jones of his right, under 15 U.S.C. § 1681j(a)(1)(A), to obtain one free copy of his Rental Exchange consumer report every 12 months, including by failing to maintain a "streamlined process" and toll-free telephone number to do so as required by 15 U.S.C. § 1681j(a)(1)(C)(i).

90.     Moreover, as more fully explained above, ONLINE failed to investigate, or to even acknowledge, Mr. Jones's April 2019 dispute, as required by 15 U.S.C. § 1681i.

91.     Under 15 U.S.C. § 1681n, Mr. Jones is entitled to actual damages, punitive damages, the costs of this action, and a reasonable attorney fee.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury on all claims herein so triable.

DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Michael B. Jones prays as follows:

A. A refund of his $200 security deposit;

B. As to TEJ, the maximum $24,000 in civil penalties to which he is entitled;

C. As to City Plaza, the maximum $24,000 in civil penalties to which he is entitled;

D. As to ONLINE, $1,000 in statutory damages and a civil penalty of $4,000;

E. Actual damages in an amount to be determined by a jury;

F. Punitive damages in the amount of $100,000 per Defendant;

G. Attorney fees, litigation expenses, and costs; and

H. Any other relief that this Court deems appropriate under the circumstances.

Dated: September 9, 2019
      Winston-Salem, NC

                **LAW OFFICE OF JONATHAN R. MILLER, PLLC**
                **d/b/a SALEM COMMUNITY LAW OFFICE**

                By: /s/ Jonathan R. Miller
                    Jonathan R. Miller

Attorney for Plaintiff:

Jonathan R. Miller

N.C. State Bar No. 48224
Law Office of Jonathan R. Miller, PLLC,
d/b/a Salem Community Law Office
717 S. Marshall St., Ste. 105F
Winston-Salem, NC 27101
Telephone: 336-837-4437
Facsimile: 336-837-4436
Email: jmiller@salemcommunitylaw.com