UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:19-cv-00924

| | |
|---|---|
| MICHAEL B. JONES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY PLAZA, LLC, )<br>T.E. JOHNSON & SONS, INC., and )<br>ONLINE INFOMRATION SERVICES, )<br>INC. )<br>)<br>Defendants. ) | **BRIEF OF DEFENDANTS<br>CITY PLAZA, LLC AND<br>IN SUPPORT OF ITS MOTION TO<br>DISMISS** |

## STATEMENT OF THE CASE

On September 9, 2019, Plaintiff instituted this action against the Defendants, seeking compensatory and punitive damages from Defendants City Plaza, LLC ("City Plaza") and T.E. Johnson & Sons, Inc. ("Johnson") for alleged violations of the North Carolina Tenant Security Deposit Act and the North Carolina Debt Collection Practices Act. Plaintiff also brought causes of action against Online Information Services, Inc. ("Online") for alleged breach of the Fair Debt Collection Practices Act, the North Carolina Collection Agency Act, and the Fair Credit Reporting Act. On November 20, 2019 Defendant City Plaza filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. That motion is currently before the Court.

## STATEMENT OF THE FACTS

City Plaza owns a building known as the Village Lofts, located in Winston-Salem, North Carolina, which building contains several residential dwelling units that City Plaza leases to third parties. Compl. ¶ 5. Johnson manages the Village Lofts for City Plaza. Id. at ¶ 8.

In May 2017, Plaintiff Jones rented apartment unit 306 of the Village Lofts. Id. at ¶ 22. The lease term began on June 30, 2017 and terminated May 31, 2018. Id. at ¶ 23. The stated rent for the unit was $880 per month. The rent was reduced by an $85 move in concession and a $42 parking concession. Id. at ¶ 24. The lease also provided for a $200 security deposit which Plaintiff Jones paid. Id. at ¶ 25.

In November 2017, Jones gave notice of termination of the lease, occasioned by his mother's unexpected passing. Id. at ¶¶ 26-27. Plaintiff Jones paid rent for December 2017 and vacated unit 306 on December 19, 2017. Id. at ¶¶ 28-29.

Johnson obtained a new tenant to lease unit 306 on January 6, 2018, with a rent of $795 monthly. Id. at 30-31.

Following re-let of the unit, on January 30, 2019, Johnson sent an accounting of amounts due and owing by Plaintiff to City Plaza and Johnson as a result of Plaintiff Jones' early termination of the lease. Id. at ¶ 33. The costs Johnson applied to Plaintiff's security deposit were supported by a contractor's invoice, noting the work included in readying unit 306 for reletting included painting, cleaning, and making ready for release. Id. at ¶ 37.

When Plaintiff Jones refused to pay the amounts owing, Johnson reported to Defendant Online Plaintiff's failure to pay the amounts due. Id. at ¶ 50. Online is a collection agency licensed to do business in North Carolina. Id. at ¶ 13. Online also makes information available to industry groups about alleged persons with bad debt. Id. at ¶¶ 16-17. Online then reported Plaintiff Jones' refusal to pay the amounts due to credit agencies. Id. at ¶ 51.

## QUESTIONS PRESENTED

I. IS DEFENDANT CITY PLAZA LIABLE UNDER THE NORTH CAROLINA TENANT SECURITY DEPOSIT ACT WHEN THE DEPOSIT WAS APPROPRIATELY APPLIED AS OUTLINED IN THE ACT?

II. IS DEFENDANT CITY PLAZA LIABLE UNDER THE NORTH CAROLINA DEBT COLLECTION PRACTICES ACT WHEN THEY APPROPRIATELY APPLIED THE DEPOSIT AS OUTLINED IN THE NORTH CAROLINA TENANT SECURITY DEPOSIT ACT?

## ARGUMENT

I. THE CLAIMS ASSERTED AGAINST CITY PLAZA IN COUNT ONE UNDER THE NORTH CAROLINA TENANT SECURITY DEPOSIT ACT DO NOT STATE A CLAIM FOR RELIEF.

A motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted if a Plaintiff fails to allege facts that would entitle him to relief. McCleary-Evans v. Maryland Dept. of Transp., 780 F.3d 582 (4th Cir. 2015), cert. denied, 136 S. Ct. 1162 (2016). A claimant must make a short and plain or clear statement of his claim showing he is entitled to relief. Federal R. Civ. P. 8(a)(2). He must also allege facts sufficient to state each element of his claim. McCleary-Evans, 780 F.3d at 585. He must provide "more than labels and conclusions" and must state more than "an

unadorned, the-defendant-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A "formulaic recitation of the elements of a cause of action will not do." Id. A court is not "bound to accept as true legal conclusions couched as a factual allegation." Id. Thus, a complaint "armed with nothing more than legal conclusions" will not suffice. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim that is plausible on its face." Id. In the case before this Court, Plaintiff Jones has prepared a complaint full of legal conclusions, and the limited facts included demonstrate that no claim has been asserted against Defendants City Plaza and Johnson.

> A. <u>Defendant City Plaza and Johnson Is Not Liable to Plaintiff under the North Carolina Tenant Security Deposit Act Because Plaintiff's Security Deposit Was Appropriately Applied the in Accordance with the Act.</u>

Chapter 42 of the North Carolina General Statues sets forth the laws governing rental of residential properties and the permitted uses of security deposits. Specifically, N.C.G.S § 42-51(a)(3) permits the lessor to use the security deposit for "damages as the result of the nonfulfillment of the rental period" (nonpayment of rent). § 42-51(a)(5) allows the deposit to be used additionally for the "costs of re-renting the premises after breach by the tenant."

If the deposit is not used in its entirety as provided in N.C.G.S. § 42-51, the deposit (or any remaining balance) must be returned to the tenant upon termination of the lease, and the landlord must provide a written notice to the tenant itemizing the application of the deposit. N.C.G.S. § 42-52. "the landlord may not withhold as damages part of the security deposit for conditions that are due to normal wear and tear." Id.

4

Defendant City Plaza Is Not Liable to Plaintiff under the North Carolina Debt Collection Practices Act because Johnson Appropriately Applied the Security Deposit in Accordance with the North Carolina Tenant Security Deposit Act. Plaintiff has not alleged any wrongful conduct committed by City Plaza, its employees or its officers. City Plaza retained Johnson, an experienced in capable manager of residential rental apartments, to manage the Village Lofts owned by City Plaza. For the purposes of this motion the factual allegations are taken as true. The purported conclusions of law are not accepted as true but are for this court to determine.

Plaintiff bases **COUNT ONE** on the North Carolina Tenant Security Deposit Act, N.C.G.S. §§ 42-50, *et seq*. The statute enumerates eight items that may be charged against the tenant security deposit. The primary item at issue here is "[t]he cost of re-renting the premises after breach by the tenant, …." N.C.G.S. § 42-51(5). The interpretation of the statute, and this provision in particular, is the heart of the issues in this case. This defendant has not found any cases on point on this issue in North Carolina, or similar statues in other jurisdictions, so this may be a matter of first impression.

Johnson sent a letter dated January 30, 2018, Exhibit C to the Complaint (Doc. 1-3), as its statutorily required accounting to itemize any damage, and show to the tenant the application of the security deposit. Nowhere in the letter did Johnson itemize "damages" much less damages that were due to "normal wear and tear." What Johnson did identify were its actual "costs to re-rent the premises." Johnson supplied Plaintiff with the itemized invoice from the contractor who performed the services. (Doc. 1-6, p.

5

23). The costs incurred for the services were identified as repainting the apartment, cleaning the apartment, replacing the drip pans on the stove and replacing the air filter for the HVAC system.

Plaintiff alleges in his Compl. ¶38 the following:

> 38. **Repainting, cleaning, and replacing the drip pans and air filter in an air-conditioning unit are tasks that landlords routinely perform between tenants**, and thus constitute "normal wear and tear" within the meaning of § 42·52. (Emphasis added)

In considering a motion to dismiss pursuant to rule 12(b)(6), Plaintiff is bound by the allegations in his Complaint. Therefore, the court should accept as true for purposes of this motion that "[r]epainting, cleaning, and replacing the drip pans and air filter in an air-conditioning unit are tasks that landlords routinely perform between tenants." Compl. §38. The court need not accept the erroneous conclusion of law contained in Compl. ¶38.

The correct conclusion of law, based on the statute and the plaintiff's allegations of fact, is that these services routinely performed by the landlord between tenants are "costs of re-renting the premises." The statute makes it clear that these costs of re-renting the premises can be recovered by landlord when the plaintiff breaches the lease by terminating the leasehold early, as was the case here. The determinative factor on whether or not the landlord can apply the deposit to the costs of re-renting the premises is whether or not the plaintiff breaches the lease. If the plaintiff fulfilled the full term of the lease, then the costs of re-renting the apartment routinely performed by landlords between tenants would not be recoverable. However, these services routinely performed

by landlords as a cost of re-renting the premises are recoverable when the tenant breaches the lease by terminating early, thereby accelerating the expenses and likely requiring the expenses to be incurred more frequently.

This subsection of the statute provides that the costs of re-renting the premises, include "reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises." N.C.G.S. § 42-51(5). These commissions are only recoverable in a circumstance where the tenant breaches the lease. While the landlord may pay the same commissions after the term of the lease expires, without a breach, these costs cannot be deducted from the deposit. It is the breach by the tenant that makes these costs recoverable from the deposit.

Likewise, the routine costs of repainting the apartment are costs incurred for re-renting the premises, whether they are incurred six months early or after the lease term expires. However, they are only recoverable when the tenant breaches the lease. These costs for repainting and cleaning the apartment are still incurred after the lease term, and before new tenant moves into the apartment, they are just not recoverable from the previous tenant's security deposit when the tenant fulfilled his lease.

The good sense of this interpretation can be understood and appreciated in the context of the landlord's duty to mitigate the loss of rents, after a tenant breaches the lease by early termination. The landlord has a duty to find a new tenant to rent the apartment. Consider the circumstance where the landlord rightfully informs the new prospective tenant that he can move into the apartment, but the apartment would not be repainted, the apartment would not be cleaned, the drip pans would not be replaced and

7

the air filter would not be replaced. In that circumstance, the tenant may very likely decline to rent that apartment and rent another apartment instead, where the landlord did repaint and clean the apartment. In that instance the breaching tenant who did not fulfill his term could still be liable for the rent remaining on the lease since the apartment was not re-rented.

It seems axiomatic that trying to re-rent dirty apartments would not be a good practice for the breaching tenant or for the landlord.

The breaching tenant receives the benefit of the landlord incurring the costs of re-renting the premises, the routine repainting and cleaning, which were incurred at that time of the breach solely due to the breach of the lease by the tenant. The breaching tenant receives the benefits of the repainting and cleaning, just as the tenant would receive the benefit of the commissions paid to the real estate broker, due to the fact that the breaching tenant's rent obligations are extinguished. It is clear that both repainting and commissions may be important to re-renting the premises and terminating the breaching tenant's obligation to pay future rent through the end of the breaching tenant's original lease term. Under the circumstances, it is certainly fair and reasonable to expect the breaching tenant to pay these expenses, which were incurred as a result of his breach and work to his benefit.

Plaintiff's contention that these costs are damages from normal wear and tear is misguided. Damages are very different term from costs. The legislature had a purpose and a meaning when it used the phrase "cost to re-rent" and distinguished it from "damages." Damages are recoverable whether or not the tenant breaches the lease, unless

8

those damages are conditions that constitute merely wear and tear. Costs to re-rent can be recovered whether or not there is any physical damage to the premises, but such costs to re-rent are only recoverable when the tenant breaches the lease.

The painting and cleaning services are established, for the purposes of this motion, as costs incurred for services "routinely perform[ed] between tenants. If this court concludes that these costs are "costs to re-rent the premises," then Johnson, as manager of the apartments for City Plaza, properly applied the Plaintiff-tenant's deposit and **COUNT ONE** of the of the complaint must be dismissed.

II. THE CLAIMS ASSERTED AGAINST CITY PLAZA IN COUNT TWO UNDER THE NORTH CAROLINA DEBT COLLECTION PRACTICES ACT DO NOT STATE A CLAIM FOR RELIEF WHERE PLAINTIFF'S TENANT DEPOSIT WAS APPROPRIATELY APPLIED.

The claim under this **COUNT TWO** as to City Plaza is based on allegations that City Plaza is vicarious liability for the actions of Johnson. If the court interprets the statute as contended by City Plaza in the brief above, then the tenant security deposit was properly applied by Johnson. Thus, there were no misrepresentations or unfair practices committed by Johnson. Therefore, there should be no basis for establishing that Johnson violated the North Carolina Debt Collection Practices Act, N.C.G.S. §§75-50 *et seq*.

Defendant Johnson appropriately addressed the handling of Mr. Jones' security deposit and appropriately charged amounts to him based on the North Carolina Rental Security Deposit Act. As such, no false representations were made to Plaintiff, the Better Business Bureau ("BBB"), or the North Carolina Real Estate Commission ("NCREC"). Thus, all of Plaintiff Jones' allegations regarding false representations made under the

North Carolina Debt Collection Practices Act fail because no false representations were made.

Plaintiff's claims under that Act based on Johnson's failing to disclose its attempts to collect a debt also fail. North Carolina General Statutes Section 75-54(2) requires that communications attempting to collect a debt must disclose in written communications that they are attempts to collect a debt. Plaintiff asserts that Defendant Johnson failed to so disclose in its statutory notice letter under the North Carolina Tenant Security Deposit Act, in its follow up email regarding the dispute, and in its responses to the BBB and the NCREC. Plaintiff is not correct based on the court decisions interpreting the North Carolina Debt Collections Practices Act.

The North Carolina Debt Collections Practices Act requires first a determination of whether a communication is an attempt to collect a debt. <u>Wilkes Nat. Bank v. Halvorsen</u>. 126 N.C. App. 179, 484 S.E.2d 582, <u>rev. denied</u>, 346 N.C. 557, 488 S.E.2d 826 (1997). Once it is established that a document is an attempt to collect a debt, courts look to the language used in the document, noting that the Act does not require a recitation of the statutory language in the communication to establish compliance with the Act. <u>Id.</u> A writing does not violate the Act where it states the specific balance owed, the time frame for payment, and the consequences of nonpayment. <u>Id.</u>

In the case before this Court, the initial statutory notice itemized the amounts due and requested immediate payment. The communication was clearly an attempt to collect a debt, and as such, as in <u>Wilkes Nat. Bank</u>, no violation of the North Carolina Debt Collection Practices Act occurred. The email exchange between Jones and Johnson was

10

not a demand for payment. Rather, the email explained Defendant Johnson's position as to why amounts were due. It is devoid of a demand for payment, and under <u>Wilkes Nat. Bank</u>, it would not be considered an attempt to collect a debt. The same is true of Defendant Johnson's response to the BBB and the NCREC. Both communications were to a third party, responding to a Complaint from Plaintiff Jones to those entities. The communications were a defense to Defendant Johnson's position to these entities, not a demand to Jones for payment. As such, neither was an attempt to collect a debt.

Moreover, there was no misrepresentation with regard to the application of the deposit to unpaid rent. It is undisputed that there were six days where City Plaza did not collect any rent after Plaintiff moved out of the apartment. By re-renting the apartment, the landlord mitigated its damages so that the tenant was no longer responsible for the rent due from the date of his breach to the end of the term of the lease. Plaintiff is not entitled to credit against his deposit or against lost rent during the time the apartment went unrented. Therefore, there is no basis to establish a claim that Johnson demanded "bogus" rent.

Because Plaintiff Jones has failed to state a claim under the North Carolina Debt Collection Practices Act, this Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

11

Case 1:19-cv-00924-NCT-JLW   Document 16   Filed 11/21/19   Page 11 of 14

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Defendant City Plaza from this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to state a claim against City Plaza.

Respectfully submitted, this the 20th day of November, 2019.

/s/ Jack B. Bayliss, Jr.
Jack B. Bayliss, Jr. (NCSB 8637)
jbayliss@crlaw.com
Rachel S. Decker (NCSB 22020)
rsd@crlaw.com
*Attorneys for Defendant City Plaza, LLC*
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St. (27401)
Post Office Box 540
Greensboro, North Carolina 27402-0540
Telephone: 336-379-8651
Facsimile: 336-478-1175

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on all parties to this action by electronically filing the same with the Clerk of Court using the CM/ECF system, which caused notification of such filing to be emailed to the following parties of record:

Jonathan R. Miller
Law Office of Jonathan R. Miller, PLLC
d/b/a Salem Community Law Office
717 S. Marshall St., Ste. 105F
Winston-Salem, NC 27101
[jmiller@salemcommunitylaw.com](mailto:jmiller@salemcommunitylaw.com)
*Attorney for Plaintiff*

John L. Wait
Wait Law, PLLC
846 West Fourth Street
Winston-Salem, NC 27101
[john@wait-law.com](mailto:john@wait-law.com)
*Attorney for Defendant T.E. Johnson & Sons, Inc.*

Caren D. Enloe
Smith Debnam Narron Drake
Saintsing & Myers LLP
P.O. Box 176010
Raleigh, NC 27619-6010
*Attorney for Defendant Online Information Services, Inc.*

This the 20th day of November, 2019.

/s/ Jack B. Bayliss, Jr.
Jack B. Bayliss, Jr. (NCSB 8637)
*[jbayliss@crlaw.com](mailto:jbayliss@crlaw.com)*
*Attorney for Defendant City Plaza, LLC*
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St. (27401)
Post Office Box 540
Greensboro, North Carolina 27402-0540
Telephone: 336-379-8651
Facsimile: 336-478-1175

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:19-cv-00924

| | |
|---|---|
| MICHAEL B. JONES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CERTIFICATION** |
| ) | **OF WORD COUNT** |
| CITY PLAZA, LLC, ) | |
| T.E. JOHNSON & SONS, INC., and ) | |
| ONLINE INFOMRATION SERVICES, ) | |
| INC. ) | |
| ) | |
| Defendants. ) | |

I certify that the *Brief of Defendant City Plaza, LLC and in Support Of Its Motion To Dismiss* (including the body of the brief, headings, and footnotes) complies with Local Civil Rule 7.3(d).

Respectfully submitted, this the 21st day of November, 2019.

/s/ Jack B. Bayliss, Jr.
Jack B. Bayliss, Jr. (NCSB 8637)
jbayliss@crlaw.com
Rachel S. Decker (NCSB 22020)
rsd@crlaw.com
*Attorneys for Defendant City Plaza, LLC*
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St. (27401)
Post Office Box 540
Greensboro, North Carolina 27402-0540
Telephone: 336-379-8651
Facsimile: 336-478-1175