IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:19-cv-00924

| | |
|---|---|
| MICHAEL B. JONES,<br><br>　　　Plaintiff,<br><br>v.<br><br>CITY PLAZA, LLC, T.E. JOHNSON & SONS, INC., and ONLINE INFORMATION SERVICES, INC.<br><br>　　　Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT T.E. JOHNSON & SONS, INC.** |

Defendant, T.E. Johnson & Sons, Inc. ("T.E. Johnson"), pursuant to Local Rule 7.2 of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, submits this Memorandum in support of its motion to dismiss.

**STATEMENT OF THE CASE**

On September 9, 2019, Plaintiff filed this action alleging claims under the North Carolina Tenant Security Deposit Act and the North Carolina Debt Collection Practices Act against Defendants T.E. Johnson and City Plaza, LLC ("City Plaza"). (Docket No. 1) In addition to these state law causes of action, Plaintiff alleged violations of the Fair Debt Collection Practices Act, the North Carolina Collection Agency Act, and the Fair Credit Reporting Act against Defendant Online Information Services, Inc. ("Online") (Docket No. 1) All of Plaintiff's claims relate to: (1) whether Plaintiff's $200.00 security deposit was properly assessed upon his breaching his lease with City Plaza in November 2017; and (2) whether Plaintiff's debt with City Plaza was properly reported thereafter. (Docket No. 1)

T.E. Johnson and City Plaza were served with the summons and complaint on September 30, 2019, and T.E. Johnson sought and obtained an extension to answer or otherwise plead on October 18, 2019. (Docket Nos. 4-5, 7) T.E. Johnson now submits this motion to dismiss in response to Plaintiff's complaint.

## STATEMENT OF THE FACTS[1]

Plaintiff signed a lease to rent Apartment 306 at The Village Lofts, 511 N. Cherry St., Winston-Salem, NC (the "Property"), in May 2017. (Compl. ¶¶ 22, 24) The Property was owned by City Plaza and managed by T.E. Johnson, a real estate management firm. (Compl. ¶ 8, 22) In November 2017, Plaintiff breached the lease by giving notice of termination prior to the end of the lease term, which was not scheduled to end until May 31, 2018. (Compl. ¶¶ 23, 26-27) Plaintiff paid December's rent and vacated the Property on December 19, 2017. (Compl. ¶¶ 28-29)

After Plaintiff vacated the Property, T.E. Johnson took action in order to make it ready for another tenant. (Compl. ¶¶ 30, 33) As part of this turnover, T.E. Johnson had the Property painted and cleaned, and new drip pans and air filters were installed. (Compl. ¶ 33, Exhibits C and F) Plaintiff was charged $504.00 for the apartment turnover. (Compl. ¶ 33, Exhibit C) T.E. Johnson explained to Plaintiff that these charges represented the "actual cost" of making the Property ready for a new tenant following his breach of the lease. (Compl. ¶ 41, Exhibit D)

On January 30, 2018, T.E. Johnson timely sent Plaintiff an accounting of his security deposit. (Compl. ¶ 33) The accounting charged Plaintiff $504.00 for the actual costs of preparing the Property for a new tenant and $150.60 for six days of lost rent for the time between January 1, 2018, and January 6, 2018, when he property was re-rented to another tenant. (Compl. ¶ 33,

---

[1] The following statement of facts is taken from the allegations of the Complaint as required under Rule 12 for purposes of this motion only.

Exhibit C) After applying the $200.00 security deposit to these expenses, the accounting requested that Plaintiff pay $454.60 for costs not covered by the security deposit but caused by his breaching the lease. (Compl. ¶ 33, Exhibit C)

Sometime in 2018, T.E. Johnson reported to Online that Plaintiff owed City Plaza $454.60. (Compl. ¶ 50) Online thereafter reported the debt to several credit reporting agencies, and Plaintiff has since attempted to challenge the debt with these agencies. (Compl. ¶¶ 51-69)

## QUESTIONS PRESENTED

1. WHETHER T.E. JOHNSON VIOLATED NORTH CAROLINA'S TENANT SECURITY DEPOSIT ACT.

2. WHETHER T.E. JOHNSON VIOLATED THE NORTH CAROLINA DEBT COLLECTION PRACTICES ACT.

## ARGUMENT

### I. Standard on Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1951. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950.

## II. **Plaintiff's security deposit was properly applied upon his breaching the lease.**

It is undisputed that Plaintiff breached his lease and that his deposit was applied by T.E. Johnson to cover the costs incurred by City Plaza as a result of that breach. Both the legislative history and the plain language of the Tenant Security Deposit Act as currently codified demonstrate that Plaintiff's deposit was properly applied in this case.

When interpreting state statutes and their meaning, federal courts apply the statutory construction applied by the state's highest court. *Eubanks v. S.C. Dep't of Corr. (In re DNA Ex Post Facto Issues)*, 561 F.3d 294, 300 (4th Cir. 2009). In North Carolina, a court "first must look to the plain language of the statutes themselves. Ordinary rules of grammar apply when ascertaining the meaning of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 811, 517 S.E.2d 874, 878 (1999) (citations and quotations omitted). "[W]hen the legislature has erected within the statute itself a guide to its interpretation, that guide must be considered by the courts in the construction of other provisions of the act which, in themselves, are not clear and explicit." *Williams v. Williams*, 299 N.C. 174, 180-181, 261 S.E.2d 849, 854 (1980) (citations omitted). "The act must be considered as a whole and none of its provisions shall be deemed useless or redundant if they can be reasonably considered as adding something to the act which is in

harmony with its purpose. Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each[.]" *Id*.

In North Carolina, tenant security deposits are permitted to be used by the landlord for "[t]he costs of re-renting the premises after breach by the tenant[.]" N.C.G.S. § 42-51(a)(5) (2019). This exact language has been part of the Tenant Security Deposit Act since 1977 when it was first codified. 1977 N.C. Sess. Laws page no. 1237.[2] In 2012, the North Carolina General Assembly amended N.C.G.S. § 42-51. 2012 N.C. Sess. Laws page no. 75.[3] The amended statute provided that security deposits could be applied to cover "[t]he costs of re-renting the premises after breach by the tenant, *including* any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises." *Id*. (emphasis added). There have been no changes to this part of section 42-51 since it was amended in 2012. *See* N.C.G.S. § 42-51(a)(5) (2019).

The 2012 revision of N.C.G.S. § 42-51(a)(5) provides compelling evidence that Plaintiff's case is without merit. If a tenant fulfills the entire lease term, and does not otherwise breach the lease, a landlord may not deduct from the deposit any costs paid to a real estate agent to find a new tenant. N.C.G.S. § 42-51(a)(5). This is because the cost of such real estate services may only be withheld from the deposit when the tenant breaches the lease. *Id.* The 2012 amendment demonstrates that a breach by the tenant gives the landlord a right to recover costs not otherwise available, and to deduct those costs from the deposit. The General Assembly did not limit the type of costs reasonable in this context – costs that a landlord can deduct *only* when a tenant breaches the lease – when it enacted the amendment in 2012. Instead, the amendment

---

[2] *Available at* https://ncleg.net/Library/sessionlaws/1971-1980/pubs_sessionlaws1977.pdf.

[3] *Available at* https://ncleg.net/Library/sessionlaws/2001-2015/pubs_sessionlaws2012.pdf.

5

clearly indicates that the definition of "costs" must, at the least, include those costs that a landlord incurs as they use "reasonable efforts to relet the premises to a new tenant." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 575, 500 S.E.2d 752, 759 (1998) (discussing a landlord's duty to mitigate damages).

There is no case in North Carolina that addresses this principle directly. However, other courts have reached the same conclusion. *Carr v. Ed Stein Realtors*, 10 Ohio App. 3d 242, 243, 461 N.E.2d 930, 931 (1983) ("Newspaper advertising in an attempt to secure a new tenant is necessary and foreseeable to mitigate damages when a tenant abandons the premises and breaches the lease. The cost of such advertising flows naturally from plaintiff's breach and is not an unforeseen or special loss."); *Dague v. Carroll Realty Mgmt. Corp*., 2010 Mass. App. Unpub. LEXIS 628, *4-5 ("As a result of the tenants' breach of the lease, the landlords spent a total of $1,245 to clean, paint, and change the locks of the unit. In accordance with well-settled Massachusetts law, we consider these expenses to be a component of the tenants' 'unpaid rent' flowing from their breach, and thus were properly deducted from their security deposit[.]").

In this case, Plaintiff has admitted in his complaint that he breached the lease, and the complaint shows that the deposit was used to cover the actual costs of that breach. (Compl. ¶¶ 23, 26-27, 33, Exhibit C) Plaintiff's deposit was therefore properly used by T.E. Johnson to cover the costs incurred by City Plaza by Plaintiff's breach. (Compl. ¶ 33)

This should be the end of the analysis, but in his complaint, Plaintiff focuses on the "ordinary wear and tear" limitation contained on N.C.G.S. § 42-52 to support his claim, and implies that it must be some kind of limitation on the costs a landlord may deduct following a breach. (Compl. ¶ 42) This is a simple misreading of the statute.

Section 42-52 states in part that "[t]he landlord may not withhold as *damages* part of the security deposit for conditions that are due to normal wear and tear nor may the landlord retain an amount from the security deposit which exceeds his actual damages." N.C.G.S. § 42-52 (2019) (emphasis added). The limitation as to ordinary wear and tear in this statute does not mention *costs*. *Id.* The entire statute reads as follows:

> Upon termination of the tenancy, money held by the landlord as security may be applied as permitted in G.S. 42-51 or, if not so applied, shall be refunded to the tenant. In either case the landlord in writing shall itemize any damage and mail or deliver same to the tenant, together with the balance of the security deposit, no later than 30 days after termination of the tenancy and delivery of possession of the premises to the landlord. If the extent of the landlord's claim against the security deposit cannot be determined within 30 days, the landlord shall provide the tenant with an interim accounting no later than 30 days after termination of the tenancy and delivery of possession of the premises to the landlord and shall provide a final accounting within 60 days after termination of the tenancy and delivery of possession of the premises to the landlord. If the tenant's address is unknown the landlord shall apply the deposit as permitted in G.S. 42-51 after a period of 30 days and the landlord shall hold the balance of the deposit for collection by the tenant for at least six months. The landlord may not withhold as damages part of the security deposit for conditions that are due to normal wear and tear nor may the landlord retain an amount from the security deposit which exceeds his actual damages.

N.C.G.S. § 42-52 (2019).

In the first sentence, the landlord is given a duty to either apply any "money" they are holding as permitted in G.S. 42-51 or refund the deposit to the tenant. N.C.G.S. § 42-52. The second sentence mandates that the landlord "itemize any *damage*," not costs. *Id.* (emphasis added). Read simply, this means that the landlord is not required to itemize costs that it incurs following a breach of the lease by the tenant, even though T.E. Johnson did so in this case. *Id.*

7

The requirement that the landlord itemize *damage*, and not costs, makes sense based on the permitted uses of the deposit in section 42-51:

> (1) The tenant's possible nonpayment of rent and costs for water or sewer services provided pursuant to G.S. 62-110(g) and electric service pursuant to G.S. 62-110(h).
>
> (2) *Damage* to the premises, including damage to or destruction of smoke alarms or carbon monoxide alarms.
>
> (3) *Damages* as the result of the nonfulfillment of the rental period, except where the tenant terminated the rental agreement under G.S. 42-45, G.S. 42-45.1, or because the tenant was forced to leave the property because of the landlord's violation of Article 2A of Chapter 42 of the General Statutes or was constructively evicted by the landlord's violation of G.S. 42-42(a).
>
> (4) Any unpaid bills that become a lien against the demised property due to the tenant's occupancy.
>
> (5) The costs of re-renting the premises after breach by the tenant, including any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises.
>
> (6) The costs of removal and storage of the tenant's property after a summary ejectment proceeding.
>
> (7) Court costs.
>
> (8) Any fee permitted by G.S. 42-46.

N.C.G.S. § 42-51(a)(1)-(8) (emphasis added).

A tenant has firsthand knowledge of the "damages" mentioned in G.S. 42-51(a)(2)-(3). By requiring the landlord to itemize such damages, the tenant will have ability to determine whether the security deposit was properly applied. On the other hand, a tenant will not, ordinarily, have firsthand knowledge of the costs caused by their breaching the lease. Unless a tenant is in or near a property, they likely would not know what steps a landlord must take in order to make a property ready for a new tenant following a breach.

If the General Assembly wished to put a limit on the costs permitted under G.S. 42-51(a)(5), it could have done so at any time since 1977. Instead, the legislative history shows that from the time the Tenant Security Deposit Act was enacted until now, the ordinary wear and tear limitation in G.S. 42-52 only applies to "damages" and not the "costs" incurred by the landlord following a breach. 1977 N.C. Sess. Laws page no. 1237; N.C.G.S. §§ 42-51, -52. Under North Carolina's rules of statutory construction, the choice of the General Assembly to exclude costs from the ordinary wear and tear limitation should be given great deference. *Board of Drainage Comm'rs v. Credle*, 182 N.C. 442, 445, 109 S.E. 88, 90 (1921) ("The general rule is that *expressio unius, est exclusio alterius* [the expression of one thing is the exclusion of another], and when the Legislature explicitly provides that only one 'fee' shall be paid we have no right to say or to imply, that is, infer, that more was intended than what is expressly given.")

T.E. Johnson was entitled to rely on the plain, unambiguous language in G.S. 42-51(a)(5), and they were further under a fiduciary duty to their client to apply the deposit as the statutes permitted. *Sutton v. Driver*, 211 N.C. App. 92, 100, 712 S.E.2d 318, 323 (2011) (explaining fiduciary relationship). The General Assembly has, within section 42-51(a)(5) itself, provided "a guide to its interpretation" that must be used "in the construction of other provisions" in the Tenant Security Deposit Act. *Williams*, 299 N.C. at 180-181, 261 S.E.2d at 854. That guide clearly shows that the way the deposit was applied in this case is in harmony with both G.S. 42-51 and G.S. 52-52. Plaintiff's first cause of action alleging a violation of the North Carolina Tenant Security Deposit Act should therefore be dismissed.

### III. T.E. Johnson did not violate the North Carolina Debt Collection Practices Act ("NCDCPA").

In his complaint, Plaintiff outlines six acts which he alleges are violations of the NCDCPA: (1) "[a]pplying Mr. Jones's security deposit to a bogus debt that TEJ and City Plaza

were not legally entitled to collect"; (2) "[s]ending the collection letter dated January 30, 2018 (Exhibit C), which was a deceptive representation . . . and an unconscionable practice"; (3) "[s]ending the email dated March 30, 2018 (Exhibit D), which was a deceptive representation . . . and an unconscionable practice"; (4) "[s]ending the response to Mr. Jones's BBB complaint (Exhibit E), which was a deceptive representation"; (5) "[i]nstructing M&G to make false and misleading statements in response to Mr. Jones's NCREC"; and (6) "[s]ending the bogus $454.60 debt to ONLINE, knowing that ONLINE would both report it to other consumer reporting agencies and include the information in its own Rental Exchange, which was a deceptive representation complaint, which was a deceptive representation . . . and an unconscionable practice[.]" (Compl. ¶ 78) These claims have no merit.

As to the first alleged act, T.E. Johnson properly applied the deposit toward the costs of Plaintiff's breaching the lease as shown in Section II herein. Plaintiff further alleges under this claim, however, that the charge for six days of lost rent is illegitimate and "bogus." (Compl. ¶¶ 39-40, 78) It is undisputed that T.E. Johnson received no rent between January 1, 2018, and January 6, 2018, when Plaintiff was supposed to be paying the rent. (Compl. ¶ 22-30) T.E. Johnson was therefore permitted to apply the deposit toward the unpaid rent under N.C.G.S. § 42-51(1), (3). The fact that T.E. Johnson was able to find a substitute tenant willing to pay more rent is not relevant and does not act as a credit for the rent that was due to be paid by Plaintiff during this time.

As to the second alleged act, the January 30, 2018, letter from T.E. Johnson to Plaintiff was not a deceptive representation under N.C.G.S. § 75-54 or an unconscionable practice under N.C.G.S. § 75-55. As explained in herein, the letter accounting for Plaintiff's security deposit was required under the Tenant Security Deposit Act to show how the deposit was applied.

N.C.G.S. § 42-52. Since Plaintiff paid rent through December 2017, the 30-day time period began on January 1, 2018, and the accounting was timely mailed on January 30, 2018. N.C.G.S. § 42-52. Because the Tenant Security Deposit Act governs the accounting letter, it should not be considered a collection activity under Article 2 of Chapter 75 of North Carolina's General Statutes.

Even if the Court were to consider the January 30th letter an act constituting debt collection under the NCDCPA, which T.E. Johnson denies, the content of the letter was sufficient to put Plaintiff on notice that the "that the purpose of such communication [was] to collect a debt[.]" N.C.G.S. § 75-54(2) (2019). The letter had an itemized list of charges, specified an amount due, and requested that Plaintiff "remit the balance due immediately." (Compl. Exhibit C) The North Carolina Court of Appeals has held that in such circumstances a verbatim recitation of the statutory language is not necessary. *Wilkes Nat'l Bank v. Halvorsen*, 126 N.C. App. 179, 183, 484 S.E.2d 582, 584 (1997) ("To accept the defendant's argument that only a clear recitation of the statutory language satisfies the requirements of G.S. 75-54 would discourage debt collectors from providing even more clarity and guidance to debtors."). Because the January 30th letter otherwise does not falsely represent City Plaza's rights and accurately represents the correct amount owed to City Plaza, it cannot be a deceptive representation or an unconscionable practice under sections 75-54 or 75-55.

As for the third alleged act, Exhibit D of the complaint shows that the March 30, 2018, email from Ms. Robertson was merely a response to an email sent from Plaintiff on March 28, 2018. (Compl. Exhibit D) There is no demand to pay any debt in the email, and since the email otherwise only responds to Plaintiff's earlier email, T.E. Johnson cannot qualify as a debt collector in this communication. N.C.G.S. § 75-50(3) ("'Debt collector' means any person

11

engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes."); *Reid v. Ayers*, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000) ("[B]efore a claim for unfair debt collection can be substantiated, three threshold determinations must be satisfied. First, the obligation owed must be a 'debt'; second, the one owing the obligation must be a 'consumer'; and third, the one trying to collect the obligation must be a 'debt collector.'"). The March 30th email is therefore not a deceptive representation or an unconscionable practice under the NCDCPA.

As for the fourth and fifth alleged acts, G.S. 75-54(4), the provision alleged to be violated by T.E. Johnson, provides that a debt collector shall not "[f]alsely represent[] the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely represent[] that the collector is in any way connected with any agency of the federal, State or local government; or falsely represent[] the creditor's rights or intentions." N.C.G.S. § 75-54(4) (2019). Exhibits E and F to the complaint speak for themselves, and as already shown herein, no part of T.E. Johnson's response to the BBB or the North Carolina Real Estate Commission was a deceptive representation under G.S. 75-54. Moreover, neither of these communications were provided in order to try to collect a debt from Plaintiff.

As for the sixth alleged act, the undisputed facts show that Plaintiff owed $454.60 to City Plaza for breaching the lease. T.E. Johnson, by reporting the correct amount owed, did not deceptively represent any part of the debt to Online or commit an unconscionable practice (which is not identified in Plaintiff's complaint), and therefore did not violate the NCDCPA.

## **CONCLUSION**

The complaint fails to state a claim upon which relief can be granted. T.E. Johnson accordingly requests this Court dismiss, with prejudice, all of Plaintiff's causes of action against

12

it. In the alternative, T.E. Johnson requests the Court at least dismiss Plaintiff's claim for punitive damages, because the foregoing shows that T.E. Johnson acted reasonably under the circumstances and did not engage in any willful or wanton conduct. T.E. Johnson additionally requests any such further relief as this Court may deem appropriate.

Respectfully submitted, this the 20th day of November, 2019.

MARTIN & GIFFORD, PLLC

/s/ John L. Wait

John L. Wait
*Attorney for Defendant T.E. Johnson & Sons, Inc.*
State Bar No. 40152
301 N. Main St., Suite 2200
Winston-Salem, NC 27101
P: (336) 714-0333
F: (336) 714-0334
john@martingiffordlaw.com

13

Case 1:19-cv-00924-NCT-JLW   Document 17   Filed 11/21/19   Page 13 of 15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on all parties to this action by electronically filing the same with the Clerk of Court using the CM/ECF system, which caused notification of such filing to be emailed to the following parties of record:

Law Office of Jonathan R. Miller, PLLC
d/b/a Salem Community Law Office
717 S. Marshall St., Ste. 105F
Winston-Salem, NC 27101
jmiller@salemcommunitylaw.com
*Attorney for Plaintiff*

Rachel S. Decker
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St. (27401)
Post Office Box 540
Greensboro, North Carolina 27402-0540
rsd@crlaw.com
*Attorney for Defendant City Plaza, LLC*

Caren D. Enloe
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS LLP
PO Box 176010
Raleigh, NC 27619-6010
cenloe@smithdebnamlaw.com
*Attorney for Defendant Online Information Services, Inc.*

This the 20th day of November, 2019.

MARTIN & GIFFORD, PLLC

/s/ John L. Wait

John L. Wait
*Attorney for Defendant T.E. Johnson & Sons, Inc.*
State Bar No. 40152

14

**CERTIFICATE OF WORD COUNT**

      The undersigned hereby certifies that the portions of this document required to be counted under Local Rule 7.3 of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina contain no more than 6,250 words. In making this certification, the undersigned is relying on the word count reported by its word processing software (Microsoft Word).

      This the 20th day of November, 2019.

MARTIN & GIFFORD, PLLC

/s/ John L. Wait

John L. Wait
*Attorney for Defendant T.E. Johnson & Sons, Inc.*
State Bar No. 40152
